**\*FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

The Honorable Freda L. Wolfson, U.S.D.J.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Action No. 05-840 |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| vs. | : | |
| | : | |
| | : | |
| ALKHIDER TULU, | : | |
| Defendant. | : | |

For Plaintiff:
James Thomas Kitchen
Office of the U.S. Attorney
402 East State Street
Suite 430
Trenton, NJ 08608

For Defendant:
Hal K. Haveson
Haveson & Otis, Esqs.
194 Nassau Street
Princeton, NJ 08542

**WOLFSON, United States District Judge**

Presently before the Court is the Motion of Defendant, Alkhider Tulu ("Tulu"), to Withdraw his Plea of Guilty. Defendant was indicted for distribution of more than 50 grams of crack cocaine on November 30, 2005. He plead guilty on March 13, 2007, and has been incarcerated from July 26, 2005, the date his criminal complaint was unsealed, to present. Defendant argues that he should be permitted to withdraw his guilty plea due to ineffective assistance of counsel. Defendant alleges that his first defense counsel, Assistant Federal Public Defender, Ms. Maggie Moy Esq., ("Ms. Moy") improperly consented to exclusions of time for purposes of the Speedy Trial Act and that his second defense counsel, Mr. David Schroth, Esq., ("Mr. Schroth"), gave ineffective assistance of counsel by advising Defendant that two then pending motions lacked merit and should be withdrawn. The two motions were: (1) a Motion for Reconsideration of this Court's denial of a suppression motion; and (2) a Motion to Dismiss the Indictment based on alleged violations of the Speedy Trial Act. The Court finds that Defendant Tulu's contentions are without merit because Mr. Schroth properly advised Defendant regarding the potential merit of his motions and Ms. Moy properly entered into continuances pursuant to the ends of justice. Hence, Defendant's Motion to Withdraw his Guilty Plea is denied.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On July 15, 2005, a sealed criminal complaint was filed by the United States of America (the "Government") against Tulu. On July 25, 2005, this complaint was unsealed, and on July 26, 2005, Defendant appeared for his initial appearance before

U.S. Magistrate Judge Ann Marie Donio.  On August 1, 2005, Judge Donio detained Defendant pending trial.

### A. Exclusions of Time During Ms. Moy's Representation

Defendant was represented by Ms. Moy, Assistant Federal Public Defender, from July 26, 2005 until September 14, 2006.  On August 3, 2005, an order continuing the deadline for the filing of an indictment was executed by both parties and signed by U.S. Magistrate Judge Joel Rosen, excluding the time from August 2, 2005 until October 3, 2005 pursuant to the "ends of justice."  On September 25, 2005, the parties consented to another order continuing the deadline for the filing of an indictment, which was approved by U.S. Magistrate Judge Joel Rosen, excluding the time from October 3, 2005 until November 2, 2005.  On October 31, 2005, the final order continuing the deadline for the filing of an indictment was signed by the parties and U.S. Magistrate Judge Joel Rosen, excluding the time from November 2, 2005 until December 2, 2005.  The total pre-indictment exclusion of time for purposes of the Speedy Trial Act was from August 2, 2005 until December 2, 2005, approximately four months.

On November 30, 2005, a federal grand jury returned a one count indictment against Defendant, charging him with possession with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  On December 12, 2005, Defendant appeared for an arraignment before U.S. Magistrate Judge Donio and entered a plea of not guilty.  Defendant's trial was originally set for February 6, 2006.  On January 6, 2006, Defendant filed a Motion for Pretrial Relief, including the suppression of evidence.  On January 11, 2006, this Court set a hearing

date of January 27, 2006 for Defendant's motion, although the hearing was actually held on February 2, 2006.  After hearing testimony of several witnesses on that date, as well as the arguments of counsel, the Court rendered an oral decision denying Defendant's Motion to Suppress Evidence.

On February 9, 2006, an order continuing the trial date pursuant to the ends of justice was signed by both parties and entered by the Court, excluding the time from February 8, 2006 until April 7, 2006.  On February 14, 2006, Defendant filed a pro se appeal of this Court's February 2, 2006 rulings.  This appeal was pending until its dismissal by the Third Circuit on November 28, 2006.  On March 10, 2006, Defendant filed a Motion to Compel Discovery.  This Court set a hearing date of April 7, 2006 for the motion.  Subsequently, continuance orders were signed by both parties and entered by the Court, pursuant to the ends of justice, on the following dates:  April 5, 2006, excluding the time from April 7, 2006 until May 8, 2006;  May 9, 2006, excluding the time from May 8, 2006 until June 9, 2006; June 15, 2006, excluding the time from June 15, 2006 until July 10, 2006;  July 21, 2006, excluding the time from July 19, 2006 until August 14, 2006; and August 17, 2006, excluding the time from August 17, 2006 until September 15, 2006.

The periods of time that were excluded by continuance orders during the course of Ms. Moy's representation of Defendant were:  August 3, 2005 through December 2, 2005 (pre-indictment), February 8, 2006 through June 9, 2006,  June 15, 2006 through July 10, 2006,  July 19, 2006 through August 14, 2006, and August 17, 2006 through September 15, 2006.  During the course of Ms. Moy's representation of Defendant, the periods of time that were excluded based upon Defendant's pending

motions and Defendant's appeal were: January 6, 2006 through February 2, 2006 and February 14, 2006 through November 28, 2006 (extending well past the September 14, 2006 date when Ms. Moy was replaced as Defendant's counsel).

### B. Exclusions of Time During Mr. Schroth's Representation

On August 30, 2006, Defendant filed a motion for appointment of substitute counsel in place of Ms. Moy, based upon differences in opinion and strategy between counsel and the Defendant. The Court granted that motion and Mr. Schroth was appointed as Defendant's new counsel; he served in that capacity from September 14, 2006 through July 13, 2007. Beginning the same day as his appointment, and to afford new counsel an opportunity to review the file, a series of orders were signed by both parties and entered by the Court, pursuant to the ends of justice, on the following dates: September 14, 2006, excluding the time from September 14, 2006 until November 3, 2006; November 3, 2006, excluding the time from November 3, 2006 until December 1, 2006; November 13, 2006, excluding the time from November 13, 2006 until December 1, 2006; and December 1, 2006, excluding the time from December 1, 2006 until February 1, 2007. On January 31, 2007, Defendant appeared before this Court with counsel, and submitted an application for a 60 day continuance. A scheduling order was issued setting a new trial date of March 26, 2007.

On February 9, 2007, Defendant filed a Motion for Reconsideration of his Motion to Suppress, and on February 16, 2007, Defendant filed a second Motion for Reconsideration of his Motion to Suppress and a Motion to Dismiss on Speedy Trial grounds. Also on that date, an order continuing the trial date, pursuant to the ends of justice, was signed by both parties and entered by the Court, excluding the time from

February 16, 2007 until March 26, 2007. A hearing date on Defendant's motions was set for March 19, 2007.

The periods of time that were excluded by continuance orders during the course of Mr. Schroth's representation of Defendant were: September 14, 2006 through February 1, 2007 and February 16, 2007 through March 26, 2007. The periods of time that were excluded based upon pending motions and Defendant's appeal during the course of Mr. Schroth's representation of Defendant were: September 14, 2006 through November 28, 2006 (Defendant's appeal) and February 9, 2007 through March, 13, 2007 (Motion for Reconsideration and Motion to Dismiss on Speedy Trial grounds).

### C.   Defendant's Motion to Withdraw his Guilty Plea

On March 13, 2007, the hearing date for Defendant's motions, Defendant instead entered a plea of guilty. During the plea hearing, this Court inquired as to whether the motions filed by Defendant on February 9 and 16, 2007 were being withdrawn, in light of the plea. Both Mr. Schroth and Mr. Tulu acknowledged that those motions were being withdrawn. While pending sentencing, on June 12, 2007, Defendant filed a motion for appointment of yet another new attorney. On July 13, 2007, Hal K. Haveson was appointed to represent Defendant in lieu of Mr. Schroth.

On October 5, 2007, Defendant filed a Motion to Withdraw his Guilty Plea. The Government filed its brief in opposition to Defendant's motion on October 31, 2007. A hearing was held on November 5, 2007, at which time Defendant and his two former defense counsel testified. At the conclusion of the hearing, the court ordered the

parties to submit written arguments based upon the evidence presented at the hearing.

## II.   DISCUSSION

The basis for Defendant's Motion to Withdraw his Plea of Guilty is that his plea and concurrent waiver of then pending motions were based upon incompetent advice by trial counsel, Mr. Schroth.  Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw a plea of guilty after the court accepts a plea but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal."  "Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." U.S. v. Jones, 336 F.3d 245, 252 (3d Cir. 2003) (citing U.S. v. Brown, 250 F.3d 811, 815 (3d Cir. 2001). "The burden of demonstrating a 'fair and just reason' [for a defendant's withdrawal of a guilty plea] falls on the defendant, and that burden is substantial."  Id. at 252.  "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty."  Id. (quoting Brown, 250 F.3d at 815).  In determining whether a "fair and just reason" exists, the court must consider three factors: "(1) whether the defendant asserts his innocence, (2) the strength of the reason for withdrawing the plea, and (3) any prejudice to the government caused by the withdrawal."  Id.

### A.   Whether the Defendant Asserts his Innocence

The first factor used to determine whether a "fair and just reason" exists for a defendant to withdraw a plea of guilty is:  "whether the defendant asserts his innocence."  Id.  "[T]he fact that [the defendant] does not assert his innocence of the

charge against him should not prevent the allowance of the withdrawal.  However, in some situations the failure of the defendant to protest his innocence of the charge against him may be an important factor in an appellate court's refusal to disturb the district court's denial of the motion to withdraw his plea."  U.S. v. Stayton, 408 F.2d 559, 561 n.5 (3d Cir. 1969) (quoting U.S. v. Washington, 341 F.2d 277, 286 (3d Cir. 1965)).  Defendant states in his motion filed on October 5, 2007, that he does not assert his innocence.  Def.'s Br., p. 6.  Although this fact alone is not enough for the Court to deny Defendant's present motion, nonetheless it militates against it.

### B.      The Strength of the Reason for Withdrawing the Plea

The second factor used to determine whether a "fair and just reason" exists for a defendant to withdraw a plea of guilty is:  "the strength of the reason for withdrawing the plea."  Jones, 336 F.3d at 252.  Defendant's reasons for withdrawing his plea are based on his allegations that former counsel, Mr. Schroth, incompetently advised him to enter a plea of guilty and withdraw his then pending motions.  The subjects of those two motions were:  (1) reconsideration of this Court's denial of Defendant's suppression motion in connection with Defendant's arrest on May 21, 2005 by Pleasantville, New Jersey police officers; and (2) alleged violations of Defendant's speedy trial rights.

Under Third Circuit law, "[a] court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if:  (1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms, and (2) the defendant shows that he suffered 'sufficient prejudice' from his counsel's errors."  Jones, 336 F.3d at 253-54.  Defendant's allegations rely on

the competency of Mr. Schroth's assessment of the two previously pending motions.

Thus, the strength of Defendant's reason for withdrawing his plea will lie wholly in the

"strength," or likelihood of success, of those two motions.  As shown below, Defendant

fails to make this showing.  Defendant's argument that Ms. Moy provided ineffective

assistance by improperly consenting to various continuances is subsumed by the

Court's evaluation of Defendant's Motion to Dismiss for alleged violations of the

Speedy Trial Act.

### i.    Defendant's Motion for Reconsideration

To evaluate the strength of Defendant's Motion for Reconsideration of the

Court's ruling on his suppression motion, the Court must first look to the standard

mandated in assessing such motions.  A motion for reconsideration can only be made

on three grounds: (1) an intervening change in controlling law that has occurred since

the Court's earlier ruling; (2) evidence not previously available has become available;

or (3) it is necessary to correct a clear error of law or fact or prevent a manifest

injustice.  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d

Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d

Cir. 1995)); see e.g. Carmichael v. Emerson, No. 03-4787, 2004 WL 1587894, at *1

(D.N.J. May 21, 2004); Brackett v. Ashcroft, No. 03-3988, 2003 WL 22303078, at *2

(D.N.J. Oct. 7, 2003).  Reconsideration is an extraordinary remedy and should be

granted "vary sparingly."  See Loc. Civ. Rules, R. 7.1(i), cmt. n. 6(d), incorp. into R. 1.1

of the Loc. Crim. Rules.  In the instant matter, there has been no intervening change in

the law, there are no manifest errors of law or fact that must be corrected, and there is

no new evidence previously unavailable that is now available.[1]  Accordingly, Defendant's motion was highly unlikely to succeed.  Mr. Schroth testified at the November 5, 2007 hearing that he informed Defendant prior to Defendant's decision to enter a guilty plea that in his legal judgment the motion was a "weak motion."  See Hr'g Tr., November 5, 2007, at 101. This advice is supported by the Local Criminal Rules and is consistent with the courts' general disposition towards such a motion which asks to overturn a ruling on an identical issue that it has already decided.  See Loc. Civ. Rules, R. 7.1(i), cmt. n. 6(d), incorp. into R. 1.1 of the Loc. Crim. Rules. Consequently, Mr. Schroth's advice to Tulu on this motion cannot be shown to be "unreasonable under prevailing professional norms," nor can Defendant show that he "suffered sufficient prejudice from his counsel's [alleged] errors."  Jones, 336 F.3d at 253-54.

### ii.   Defendant's Motion for Dismissal due to an Alleged Violation of the Speedy Trial Act

As to Defendant's Motion to Dismiss the indictment due to an alleged violation of his post-indictment speedy trial rights, Mr. Schroth testified that his advice to Tulu was that such a motion would not end the matter for defendant because it was likely that the Government would simply re-indict him if the motion were successful.  See Hr'g Tr., November 5, 2007, at 101.  In evaluating whether Mr. Schroth's advice was "unreasonable under prevailing professional norms," and whether Defendant "suffered

---

[1]Defendant simply asserted a disagreement with the legal strategy of his prior counsel, Ms. Moy, to not call an officer as a witness at his suppression hearing.  This officer's identity was known and he was available.  The decision not to use him at the hearing was based upon Ms. Moy's legal judgment.

sufficient prejudice from his counsel's [alleged] errors," the Court must assess the strength of Defendant's speedy trial motion.  Jones, 336 F.3d at 253-54.

Both the United States Constitution and 18 U.S.C. § 3161, which is known as the Speedy Trial Act, provide that a defendant shall be given a "speedy trial" upon indictment.  The issue Defendant raised in his motion regarded his post-indictment speedy trial right.  The pertinent statute specifically sets forth that:

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).  However, certain carefully determined periods of time are automatically excluded from the calculation of the seventy-day period. 18 U.S.C. § 3161(h) et seq.  Included in those periods of time are allowances resulting from "delay . . . from any interlocutory appeal[2] [and] any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(E)-(F).  In addition, an allowance is carved out for a continuance by consent of the parties "on the basis of [the Judge's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(8)(A).

Defendant was indicted by a federal grand jury in a one count indictment on November 30, 2005.  It is from this point that the Court must count the days that have

---

[2]The extent of excludable delay for an interlocutory appeal is measured from filing of the appeal to the appellate court's resolution of the appeal. U.S. v. Davenport, 935 F.2d 1223, 1235 (11th Cir. 1991).

elapsed until the beginning of trial (or plea) to determine if Defendant's speedy trial rights were violated.  On January 6, 2006, Defendant filed a Motion for Pretrial Relief, tolling the speedy trial right until a hearing was held on the matter February 2, 2006. On February 9, 2006, the Court entered the first post-indictment continuance order pursuant to the ends of justice.  This means that a total of forty-three countable days (31 days in December, 5 in January, and 7 in February) passed before February 9, 2006.  Subsequently, the Court entered five more continuance orders, consecutively running through September 15, 2006, pursuant to the ends of justice.

### a.   Continuance Orders Entered into Pursuant to the Ends of Justice by Ms. Moy

Defendant contended in his Motion for Dismissal of his indictment that the continuances granted from February 9, 2006 through September 15, 2006 were invalid for purposes of tolling the Speedy Trial Act because Defendant Tulu did not give express approval to Ms. Moy.  Def.'s Mot. To Dismiss for Violation of Speedy Trial Rights, p. 5.  Defendant avers that over 184 days passed (March - 31 days, April - 30 days, May - 31 days, June - 30 days, July - 31 days and August - 31 days) between February 9, 2006 and September 15, 2006 (not counting the additional 19 days in February and 15 days in September), which were improperly excluded for purposes of the Speedy Trial Act.  Defendant is mistaken.

To determine whether the time period between February 9, 2006 and September 15, 2006 was properly excluded, the Court must first analyze whether Ms. Moy was authorized to enter into the aforementioned continuances.  The Speedy Trial Act provides for the exclusion of time under the following circumstances:

-12-

> Any period of delay resulting from a continuance granted by any judge
> on his own motion <u>or at the request of the defendant or his counsel</u> or at
> the request of the attorney for the Government, if the judge granted such
> continuance on the basis of his findings that the ends of justice served by
> taking such action outweigh the best interest of the public and the
> defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A) (emphasis added). The plain text of the statute states that a

continuance can be requested by "the defendant or his counsel." <u>Id.</u> If Congress

intended for a defendant to maintain sole control over the decision to move for a

continuance, it would not have included language in the statute specifically allowing a

defense attorney to seek a continuance. Nothing in the statute requires that the

defendant consent to a continuance. Rather, a court can grant a continuance, over

defendant's objection, upon the Government's motion, or on its own motion. <u>Id.</u>

Federal circuit courts generally, and the Third Circuit specifically, have most

often addressed issues relating to conflicts between attorneys and defendants

regarding, <u>inter alia</u>, continuances, in the context of ineffective assistance of counsel

claims under 28 U.S.C. § 2255. <u>See</u>, <u>e.g.</u>, <u>U.S. v. Sandini</u>, 888 F.2d 300, 312 (3d Cir.

1989) (expressing a "strong preference" for evaluating such claims in collateral

proceedings), <u>cert. denied</u>, <u>Thomson v. U.S.</u>, 494 U.S. 1089 (1990); <u>U.S. v. Daychild</u>,

357 F.3d 1082, 1095-96 (9th Cir. 2004) (same). However, in the cases where courts

have entertained claims similar to the case at bar, they have generally denied relief.

For example, in <u>Fields</u>, the Third Circuit denied an appeal in which the defendant

claimed, inter alia, that continuances sought by the defendant's own counsel abridged

his Speedy Trial Act rights. <u>U.S. v. Fields</u>, 39 F.3d 439, 442 (3d Cir. 1994). Writing for

the court, then Judge Alito noted:

-13-

> [t]he defendant's arguments are disturbing because he would have us order the dismissal of his indictment based on continuances that his own attorney sought. . . . '[d]efendants cannot be wholly free to abuse the system by requesting (h)(8) continuances and then argue that their convictions should be vacated because the continuances they acquiesced in were granted.'

Id. at 443 (quoting U.S. v. Lattany, 982 F.2d 866, 883 (3d Cir. 1992), cert. denied, 510 U.S. 829 (1993)); see also U.S. v. Willis, 958 F.2d 60, 63 (5th Cir. 1992) ("allowing defendants to sandbag the district court would encourage harmful strategic behavior and straightjacket the district court in ruling under the [Speedy Trial] Act.") (citations omitted).  The Fourth Circuit, in an unreported decision, also dealt with this precise issue in U.S. v. Bryant, No. 96-4359, 1998 WL 39393 (4th Cir. 1998).  In Bryant, the defendant claimed that although his attorney agreed to a continuance, the defendant did not, and therefore the Speedy Trial Act was violated.  1998 WL 39393, at **1-2. The defendant even filed several "ineffective assistance of counsel" motions at the trial court level contesting his attorney's actions.  Id.  The Fourth Circuit nonetheless affirmed the district court's ruling and denied the appeal.  Id. at *4.  The circuit court concluded that the defendant's consent, or lack thereof, to a continuance requested by defense counsel is irrelevant for Speedy Trial Act purposes.  Id. at **3-4.  The Fourth Circuit observed that "[t]o hold [otherwise] would put the district court in the precarious position of having to determine whether a defendant's legal counsel or the defendant himself is actually speaking for a defendant." Id. at *3.  In Bryant, the Fourth Circuit further noted the practical difficulties that would arise from a rule allowing defendants to challenge continuances agreed to by their counsel:

> If we adopted Bryant's argument here, we would be permitting another sort of sandbagging, i.e., permitting a defendant to use the services of his

counsel when it suited him, but disavowing his counsel's advice when that advice did not suit the defendant's purpose . . . . [W]e refuse to hold here that a defendant has the right to have counsel represent him for some purposes and not others.

Id. at *4.

Similar to the defendants in Bryant and Fields, Defendant Tulu asks the Court to order the dismissal of his indictment based on continuances that his own attorney sought. As did these courts, I find these arguments to be unpersuasive, and that the defendant's consent, or lack thereof, to a continuance requested by defense counsel is not controlling for Speedy Trial Act purposes. See Fields, 39 F.3d at 443-46.

Contrary to Defendant's contention, the pertinent requirements for a valid continuance pursuant to the ends of justice lie not in who moved for them, but rather in whether the court made "finding[s] that the ends of justice served . . . outweigh the best interest of the public and the defendant in a speedy trial."[3]  18 U.S.C. §

---

[3]The relevant factors for consideration, among others, used in a court's determination are as follows:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

3161(h)(8)(A); See Zedner v. U.S., 126 S.Ct. 1976, 1984 n. 3 (2006).  In Zedner, the Supreme Court held that these "findings must be made, if only in the judge's mind, before granting the continuance." Zedner, 126 S.Ct. at 1989.  However, the Supreme Court went on to clarify that "those findings must be put on the record by the time a district court rules on defendant's motion to dismiss." Id.  This is consistent with the statutory language requiring that the court put an explanation of its findings on the record either orally or in writing.  18 U.S.C. § 3161(h)(8)(A); See Zedner v. U.S., 126 S.Ct. 1976, 1984 n. 3 (2006); Fields, 39 F.3d at 444.  First, the Court will address the timing of when it placed its findings on the record and second, the Court will address its rationale for granting the continuances.

The Court met the timing requirements of the Zedner court.  It wasn't until February 9, 2006, that the Court entered a post-indictment continuance order pursuant to the ends of justice.  Subsequently, during Ms. Moy's representation of Defendant, the Court entered five more continuances consecutively running through September 15, 2006, pursuant to the ends of justice.  These continuance orders were based upon ongoing plea negotiations as set forth in the orders.  The Court met the Zedner timing requirement by listing its findings for the continuances in the

---

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(8)(B).

continuance orders themselves.[4]  At the November 5, 2007 hearing, Ms. Moy testified

that she first began to discuss plea negotiations after Defendant's Motion to Suppress

was denied on February 2, 2006. See Hr'g Tr., November 5, 2007, at p. 91-93.  This is

consistent with the reasoning set forth in the orders and is a proper purpose for such a

continuance.  Therefore, the continuances meet the Zedner timing requirement.[5]

Pursuant to the ends of justice, I found that the continuance orders, entered

into by Ms. Moy, for the purpose of continuing plea negotiations outweighed the best

interest of the public and the defendant in a speedy trial.  In this case, the Defense and

the Government desired additional time to negotiate a plea agreement.  If such

negotiations were successful they would have rendered any subsequent trial of this

matter unnecessary.  The Court also noted in the continuance orders that a

continuance would likely conserve judicial resources.  These reasons were articulated

by the Court in the orders and support a finding that the ends of justice served by

---

[4]The Court notes that not only did it meet the Zedner timing requirement, but it exemplified "the best practice," which is "to put its findings on the record at or near the time when it grants the continuance[s]."  126 S.Ct. at 1989 n. 7.

[5]Defendant makes an assertion in his post-hearing brief that Ms. Moy entered into pre-indictment continuation orders based upon ongoing plea negotiations that were not taking place.  Def.'s Post-Hr'g Supp. Br., p. 3.  Defendant references the November 5, 2007 hearing where Ms. Moy testified that until February 2, 2006, her requests for continuation orders were based upon her need to find witnesses and investigate.  See Hr'g Tr., November 5, 2007, at p. 91.  However, pre-indictment continuances were never the focus of Defendant's original Motion to Dismiss, nor upon which Defendant relies to assert the ineffective assistance of counsel ground for a withdrawal of his guilty plea.  In addition, the need to find additional witnesses and to conduct further investigation are valid reasons to enter into a continuance.  Thus, the Court finds that  Defendant's assertion is unsubstantiated, and furthermore, not pertinent for deciding the present motion before it.

granting the continuances outweigh the best interest of the public and the defendant in a speedy trial.

Indeed, there are many additional reasons for the continuances granted in the case at bar that are well articulated on the record and conform with the requirements of Section 3161(h)(8)(B). Ms. Moy testified in detail about the litany of things that Tulu requested she do on his behalf that were the impetus of her requests for continuances. These included the researching of law, discovery of witnesses, the filing of a Motion to Suppress, the filing of a motion for a funeral release from pre-trial detention, the filing of a motion to have the narcotics evidence re-weighed, the exploration of a Rule 11(c)(1)(C) plea with the Government, the researching of an Eastern District of Pennsylvania case involving a "Scott field test," and the allowance of extra time so Defendant could weigh his options. See Hr'g Tr., November 5, 2007, at 35-46. Defendant confirmed at the hearing that these things were done at his behest, and that it was more important to him that they were done properly than quickly. Id. at 36-37. Thus, Defendant's requests necessitated the requests for continuances and tolling of the Speedy Trial clock. Accordingly, the continuance orders entered into during the course of Ms. Moy's representation of Defendant were motivated by Defendant and valid.[6]

---

[6]Defendant also argues that Ms. Moy's consent to the multiple continuance orders constitutes a blanket prospective waiver. The United States Supreme Court, in Zedner v. U.S., 126 S.Ct. 1976 (U.S. 2006), held that a defendant cannot prospectively waive the application of the Speedy Trial Act. Id. at 7. The Zedner Court went on to address the unique factual situation where the defendant executed a form in the early stages of his defense waiving the applicability of the Act and its strictures. However, in the present case Tulu does not present to the court a situation where he executed a form prospectively waiving the time limits of the Speedy Trial Act; he did not waive his right

Even if the Court were to hold that Ms. Moy was not authorized by Defendant to consent to the aforementioned continuances, or that the continuance orders were not entered into for appropriate reasons, Defendant's Motion to Dismiss the indictment would still have failed.  This is because the period from the filing of Defendant's interlocutory appeal on February 14, 2006 to the appellate court's resolution of that appeal on November 28, 2006, is excludable under the Speedy Trial Act.  Thus, this makes the tally of countable days between November 30, 2005 and September 15, 2006 (the dates which Defendant alleged are relevant for his speedy trial motion) a total of 48 (43 days between indictment and February 9, 2006 and 5 days between February 9, 2006 and February 14, 2006) because the speedy trial "clock" was tolled during the pendency of Defendant's appeal from February 14, 2006 until well after the September 15, 2006 date.  Accordingly, the evidence shows that Mr. Schroth's original Motion to Dismiss on speedy trial grounds was destined for failure on these grounds alone.

### b.    Deprivation of Right to Speedy Trial

Further, to generally determine whether, in fact, a defendant has been deprived of his right to a speedy trial, the court must consider both the defendant's and the prosecution's conduct and consider four factors among others specific to the given case, namely:  (1) the length of delay; (2) the reason for the delay; (3) whether, when, and how the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant by

---

to a speedy trial "for all time" as did the defendant in <u>Zedner</u>.  Instead, each consent order tolled finite amounts of time for specified reasons.  Accordingly, <u>Zedner</u>'s holding does not apply to the factual circumstances present here.

the delay.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  Every continuance granted in this case was consummated with the consent of both parties, thus the Government cannot be held to have taken any specific action to have violated Defendant's speedy trial right. Although the Government conceded that the total length of delay was substantial in this case, each continuance was consented to by Defendant through his counsel, and granted by the Court for a finite period with specific reasons given for the delay.

These reasons included ongoing plea negotiations. Although Defendant claims that he had no idea that plea negotiations were ongoing, that alleged fact, if true, does not mean that they were not.  In fact, at the November 5, 2007 hearing, Ms. Moy testified that she did engage in plea negotiations after Defendant's Motion to Suppress was denied on February 2, 2006.  See Hr'g Tr., November 5, 2007, at p. 91-93. In reviewing general claims for ineffective assistance of counsel, the Supreme Court made clear in the case of Strickland v. Washington, 466 U.S. 668 (1984), that courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "strategic choices [by defense counsel] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 689, 690.  The specific nature and duration of any ongoing plea negotiations is left in the tactical province of defense counsel.  Former defense counsel, Ms. Moy, provided plausible and reasonable rationales for consenting to these continuances, including the evaluation of plea options with the Government. Accordingly, this Court accords deference to counsel's strategic action and deems it appropriate in such instances.

In this case, Defendant's conduct in:  (1) making extensive demands on his attorneys, (2) personally accounting for nearly nine months of tolling due to his pro se filing of an appeal with the Third Circuit, (3) having been personally present in court on a number of occasions where delays and scheduling were discussed without any objection from him, and (4) voluntarily foregoing, in open court, his initial motion to dismiss based on Speedy Trial grounds, clearly weighs heavily against his renewed claim that his Speedy Trial rights were violated.  Additionally, Ms. Moy further testified that when she wanted to get a trial date set, Tulu himself did not want to set a date, thereby requiring further tolling. See Hr'g Tr., November 5, 2007, at  72.

However, even if the Court were to rule in favor of Defendant on his Speedy Trial Act motion, as Mr. Schroth advised, the Government would likely be able to re-indict the Defendant because the Court would most likely dismiss the indictment without prejudice.  Again, Mr. Schroth's advice is supported by legal authority.  Title 18, United States Code, Section 3162(a) details the sanctions for Speedy Trial violations, should one be found by the court.  Section 3162(a) clearly provides the court with discretion to dismiss a case with or without prejudice upon evaluation of three factors: "(1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a re-prosecution on the administration of this chapter and the administration of justice."

First, it is beyond cavil that the offense with which Tulu was charged, distribution of more than 50 grams of crack cocaine is a very serious offense.  Next, it is abundantly clear that if the Court had found that there was a violation of Defendant's Speedy Trial rights as alleged in Defendant's original motion filed by Mr. Schroth, the violation was

due to no action on the part of the Government.  Instead, at the hearing, Defendant

Tulu's former counsel, Ms. Moy, testified in detail about the litany of things that Tulu

ordered that she do on his behalf that were the impetus for her requests for

continuances.  Defendant confirmed at the hearing that these things were done at his

behest, and that it was more important that they were done properly than quickly.  See

Hr'g Tr., November 5, 2007, at 36-37.  Defendant's demands were the basis and driving

force for the tolling of the Speedy Trial clock.  Thus, even if the Defendant were to

prevail on Mr. Schroth's motion, any violation of the Speedy Trial Act rested solely with

Tulu and not the Government.  Finally, re-prosecution of this drug crime would be fully

consistent with, and promotes, the administration of justice.  Thus, the Defendant could

not have equitably earned a dismissal with prejudice against the Government to re-file

the case.  Therefore, when viewing the record as a whole, including the testimony

involving Ms. Moy's reasoning for agreeing to the continuances on behalf of the

Defendant, it was certainly not unreasonable for Mr. Schroth to advise Defendant that,

at best, the case would be dismissed without prejudice and that Tulu would shortly face

identical charges once the case was re-indicted.  This situation would have left

Defendant in the same position weeks or months later, except that he would have likely

endured further incarceration in the interim while the legal process played out.[7]

Accordingly, Mr. Schroth's advice not to pursue the motion was not "unreasonable

_____

      [7]The Defendant was ordered detained on August 1, 2005.  See Dkt. Entry 8.  The
crack cocaine distribution charge that Defendant faced, and that would have been
charged in a newly filed indictment, carries the presumption of detention under 18
U.S.C. § 3142(e).

under prevailing professional norms," and that Defendant did not "suffer[] sufficient prejudice from his counsel's [alleged] errors."

### C.    Any Prejudice to the Government Caused by the Withdrawal

The third factor used to determine whether a "fair and just reason" exists for a defendant to withdraw a plea of guilty is whether:  "any prejudice to the government [is] caused by the withdrawal."  Jones, 336 F.3d at 252.  "[T]he [g]overnment need not show . . . prejudice [in this analysis] when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea."  Id. at 255 (citing U.S. v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995)). This Court finds that the first two factors used to determine if a withdrawal of a guilty plea is appropriate are not met.  However, the Court notes that while neither of the first two factors have been adequately met by Defendant, there are still reasons why the Government would be prejudiced by a withdrawal of Defendant's guilty plea.  This case is now over two years old and the facts of the case, as Defendant recites in his motion, are relatively brief and routine. The simplicity of the facts of the case can be construed to articulate a lack of prejudice to the Government, however they may also be cause for prejudice due to the natural fading memory of Government witnesses with regard to specific and important details because of the likelihood of many similar types of investigations conducted by such witnesses in the interim period. Consequently, while the Court does not find substantial prejudice to the Government, it does find that there is, at a minimum, some prejudice which could have an effect on the Government's case, if it were required to try the defendant after such a substantial period of time.

### III.    CONCLUSION

In conclusion, the Court denies Defendant's Motion for Withdrawal of his Guilty Plea because Defendant fails to show a "fair and just" reason for such relief through his unsubstantiated allegations and presentation of scant evidence of ineffective assistance of counsel.[8]  Defendant cannot direct the course of his defense through his choice of the filing of motions and an appeal, and then claim that the delays incurred thereby merit dismissal of the case.  The Court discourages the type of legal maneuverings brought about by Defendant's patent abuse of the judicial system which has necessitated the appointment of three separate counsel on his behalf.  An appropriate order will follow.


Dated: January 11th, 2008


s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

---

[8]The Court notes that Defendant also calls into question the propriety of the continuances consented to by Mr. Schroth, however these were not the bases of Defendant Tulu's motion regarding his speedy trial rights.  Thus, they have little bearing on the underlying argument that Defendant asserts alleging ineffective assistance of counsel due to advice regarding the withdrawal of then pending motions.  In any case, the Court finds this assertion to be without merit.  Defendant's request for new counsel necessitated a delay while substitute counsel became familiar with Defendant's case and each continuance order details the reasons for the continuance, including for ongoing plea negotiations.  This is a valid reason for such a continuance and such plea negotiations were actually ongoing at the time.  Consequently, these belated allegations do not have any bearing on the Court's holding.